UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

JESUS CECENA, )
                                ) NO. CV-07-344-LRS
     Petitioner, )
                                ) **ORDER DENYING**
   v.                            ) **§2254 PETITION**
R.J. SUBIA, )
     Respondent. )
_____ )

**BEFORE THE COURT** is Petitioner's 28 U.S.C. §2254 Petition For Writ Of Habeas Corpus. (Ct. Rec. 1).

## I. BACKGROUND

Petitioner is in the custody of the California Department of Corrections and Rehabilitation (CDCR) pursuant to a July 1979 conviction for the first degree murder of a police officer while that officer was engaged in the performance of his official duties. Petitioner was 17 years old at the time the offense was committed on November 4, 1978. On September 6, 1979, he was sentenced to life in prison without the possibility of parole. In June of 1982, due to a change in the law and in recognition of the fact that Petitioner was 17 years old at the time of the offense, his sentence was modified to life with the possibility of parole. Specifically, Petitioner was given an indeterminate life term of imprisonment requiring him to serve a minimum term of seven years imprisonment before becoming eligible for parole. Petitioner first became eligible for parole in June 1985. He was denied

**ORDER DENYING**
**§2254 PETITION -**           **1**

parole at each parole hearing conducted between June 1984[1] and November 2003.[2]

On November 13, 2003, Petitioner appeared before the California Board of Parole Hearings (BPH) which denied his parole for two years "with recommendations that [Petitioner] remain disciplinary free, that [he] engage in positive programs, educational or vocational type, and the Board asked for a new psych [report] to assess violence potential in the community and also to assess the significance of alcohol and drugs as it relates to the life (sic) crime." (Ex. B to Ct. Rec. 6 at p. 25).

BPH found the Petitioner unsuitable for parole following a parole consideration hearing conducted on March 22, 2006.[3] Following the denial by the BPH, Petitioner sought habeas corpus relief in the California state courts. On July 24, 2006, the San Diego County Superior Court entered a decision denying habeas relief. (Ex. E to Ct. Rec. 6). Petitioner then appealed to the California Court of Appeal, Fourth Appellate District, which, on October 26, 2006, entered an order also denying habeas relief. (Ex. F to Ct. Rec. 6). On January 24, 2007, the California Supreme Court entered an order summarily denying Petitioner's

---

[1] BPH normally sets a parole release date one year prior to the inmate's minimum eligible parole release date. *In re Lawrence*, 44 Cal.4th 1181, 1202, 82 Cal. Rptr. 3d 169, 190 P.3d 535 (2008) (citing Cal. Penal Code §3041(a)).

[2] Petitioner states he attended at least nine parole suitability hearings during that period.

[3] That Petitioner has had a parole hearing subsequent to his March 2006 hearing does not render moot his habeas petition. Subsequent hearings do not necessarily cure defects that occurred at a prior hearing. *Hodge v. Carey*, 2007 WL 163247 at *3 (E.D. Cal. Jan. 18, 2007). Public records indicate Petitioner had another suitability hearing in November 2008. It is assumed that Petitioner was not granted parole and therefore that the captioned matter has not been rendered moot.

**ORDER DENYING**
**§2254 PETITION -** 2

petition for review. (Ex. G to Ct. Rec. 6).

Petitioner's 28 U.S.C. Section 2254 Petition, filed February 21, 2007, contends BPH violated his Fourteenth Amendment due process rights by denying him parole on March 22, 2006.

## II. DISCUSSION

### A. Federal Habeas Standards

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d).

Challenges to purely legal questions resolved by a state court are reviewed under Section 2254(d)(1). Under Section 2254(d)(1), a state court decision is "contrary to" clearly established Supreme Court precedent if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495 (2000). The term "unreasonable application" has a meaning independent from that of the term "contrary to." A state court's decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." *Id*. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

**ORDER DENYING**
**§2254 PETITION -** 3

Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making an "'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. This is a "'highly deferential standard for evaluating state court rulings'" and "'demands that state court decisions be given the benefit of the doubt.'" *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003)(citations omitted).

In determining whether a state court decision is "contrary to" or an "unreasonable application" of federal law under §2254(d)(1), the federal court looks to the last reasoned state court decision as the basis for the state court judgment. *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005); *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). In the captioned matter, the last reasoned state court decision is the October 26, 2006 decision of the California Court of Appeal, Fourth Appellate District. (Ex. F to Ct. Rec. 6).

Under Section 2254(d)(2), a federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record. *Taylor v. Maddox*, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. Section 2254(e)(1).

### B. "Some Evidence"

California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners who have not already been granted a parole

**ORDER DENYING
§2254 PETITION -** 4

date. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006). The U.S. Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process with respect to his constitutionally protected liberty interest in a parole release date if the board's decision is not supported by "'some evidence in the record,' or is 'otherwise arbitrary.'" *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007)(quoting *Superintendent v. Hill*, 472 U.S. 445, 457, 105 S.Ct. 2768 (1985)).[4] "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. *Sass*, 461 F.3d at 1128 (quoting *Hill*, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" *Id*. at 1129 (quoting *Hill*, 472 U.S. at 457).

BPH must set a release date "unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date therefore, cannot be fixed . . . ." Cal. Penal Code § 3041(b). The overriding concern in determining parole suitability is public safety and the focus is on the inmate's current dangerousness. *In re Dannenberg*, 34 Cal.4th 1061, 1086, 23 Cal.Rptr.3d 417, 104 P.3d 783, *cert. denied*, 546 U.S. 844, 126 S.Ct. 92 (2005).

Circumstances tending to show unsuitability and tending to show suitability are set forth in Cal. Code. Regs., tit. 15 § 2402(c) and (d). Circumstances tending

---

[4] Petition for rehearing and rehearing en banc denied at 506 F.3d 951 (9th Cir. 2007).

**ORDER DENYING**
**§2254 PETITION -** 5

to show that a prisoner is unsuitable for release include the following: (1) the commitment offense, where the offense was committed in an "especially heinous, atrocious or cruel manner"; (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others"; (4) commission of "sadistic sexual offenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6)"serious misconduct in prison or jail." Circumstances tending to show suitability for release include: (1) the prisoner has no juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has performed acts that tend to indicate the presence of remorse or has given indications that he understands the nature and magnitude of his offense; (4) the prisoner committed the crime as the result of significant stress in his life; (5) the prisoner lacks any significant history of violent crime; (6) the prisoner's present age reduces the probability of recidivism; (7) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release"; and (8) "[i]nstitutional activities indicate an enhanced ability to function within the law upon release."

      Petitioner alleges three grounds for relief in his federal habeas petition, but they all boil down to a single contention that BPH unduly and unreasonably relied on the circumstances of Petitioner's commitment offense to the exclusion of other relevant factors. In *Biggs v. Terhune*, 334 F.3d 910, 917 (9th Cir. 2003), the Ninth Circuit Court of Appeals cautioned that "a continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and **could** result in a due process violation." (Emphasis added). In *Sass*, however, the court criticized this statement from *Biggs* as improper: "Under AEDPA [Antiterrorism and Effective Death Penalty Act of 1996] it is not our function to speculate about how future parole hearings could proceed." 461 F.3d

at 1129. In *Sass*, the court concluded that the parole board is not precluded from relying on unchanging factors such as the circumstances of the commitment offense or the petitioner's pre-offense behavior in determining parole suitability. *Id*. In *Irons*, the court sought to harmonize its decisions in *Biggs* and *Sass*. *Irons* determined that due process was not violated by the use of the commitment offense and pre-offense criminality to deny parole for a prisoner sixteen years into his seventeen years-to-life sentence. *Irons* noted that in all three cases (*Irons*, *Biggs*, and *Sass*) in which the court had held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. 505 F.3d at 853-54. *Irons*, however, cannot be read to hold that reliance on a commitment offense and pre-offense behavior must cease once the prisoner reaches the minimum number of years in his sentence.

In sum, BPH may look at immutable events, such as the nature of the conviction offense and pre-conviction criminality, to predict that a prisoner is not currently suitable for parole even after the initial denial of parole. There is no hard and fast rule as to when a denial of parole based solely upon the commitment offense or pre-offense behavior violates due process. The weight accorded to these events, however, should decrease over time as a predictor of future dangerousness, provided the prisoner demonstrates favorable behavior over that same period of time. As such, reliance on only the facts of a crime may eventually result in an arbitrary decision.[5]

---

[5] In *Hayward v. Marshall*, 512 F.3d 536, 546-47 (9th Cir. 2008), a panel of the Ninth Circuit determined that in the particular circumstances of that case, the petitioner's commitment offense did not constitute "some evidence" supporting the Governor's decision to reverse a parole grant on the basis that the petitioner

A prisoner's commitment offense, by itself, may justify parole denial if the BPH can "'point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released." *Irons*, 505 F.3d at 852, quoting *Dannenberg*, 34 Cal.4th at 1071. Factors which may be considered in determining if an offense was committed "in an especially heinous, atrocious or cruel manner" include that "[t]he offense was carried out in a dispassionate and calculated manner, such as an execution style murder," "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Cal. Code Regs., tit. 15 §2402(c)(1)(B), (D) and (E).

As the California Court of Appeal noted in its decision, BPH found that Petitioner's murder of the police officer was "exceptionally cruel and callous," considering the officer was shot six times during a routine traffic stop, after which the Petitioner fled. Furthermore, BPH found Petitioner's motive for the crime- to avoid getting caught speeding and driving under the influence of alcohol and PCP- was inexplicable or very trivial in relation to the crime. (Court of Appeal decision, Ex. F to Ct. Rec. 6 at p. 1; San Diego County Superior Court decision, Ex. E to Ct. Rec. 6 at p. 6; Tr. of March 22, 2006 BPH hearing, Ex. B to Ct. Rec. 6 at pp. 66-67). Under these circumstances, Petitioner's commitment offense, by itself, was sufficient to deny him parole. In this regard, it is noted that although Petitioner is well beyond the seven year minimum term of imprisonment imposed upon him in 1982 , the current minimum term of imprisonment for first degree murder is twenty five years. *Dannenberg*, 34 Cal.4th at 1078; Cal. Penal Code § 190. Had

---

would pose a continuing danger to society. The Ninth Circuit has, however, decided to rehear the case *en banc*, 527 F.3d 797 (9th Cir. 2008), and so the panel decision cannot be cited as precedent.

**ORDER DENYING**
**§2254 PETITION -**      8

Petitioner been subject to a 25 year minimum, he would not have become eligible for parole until 2004.

Furthermore, BPH did not rely solely on Petitioner's conduct prior to imprisonment (commitment offense; juvenile criminal history including being declared a ward for paint sniffing, joyriding, possessing a knife and burglary[6]; gang membership since age 13). BPH also relied on post-imprisonment conduct, including the fact that Petitioner participated with the Mexican Mafia in prison until around 1986, and was disciplined in prison 13 times for offenses indicating force and violence, racial disturbance, possession of inmate-manufactured alcohol and circumventing mail, with his last disciplinary finding being in 1987 for control of a metal file. (Court of Appeal decision, Ex. F to Ct. Rec. 6 at p. 2).

Petitioner was duly and appropriately commended by the BPH for being infraction-free since 1987, a period of almost twenty years. BPH also gave the Petitioner credit for having "above-average" parole plans. (Court of Appeal decision, Ex. F. to Ct. Rec. 6 at p. 2; San Diego County Superior Court decision, Ex. E to Ct. Rec. 6 at p. 6; Tr. of BPH hearing, Ex. B to Ct. Rec. 6 at pp. 68-69). That said, there was still "some evidence" justifying BPH's decision to deny parole based on Petitioner being a danger to society if released. Accordingly, Petitioner's due process rights were not violated by the denial of parole at his March 22, 2006 hearing.

## III. CONCLUSION

The California Court of Appeal's adjudication of Petitioner's constitutional claim did not result in a decision that was contrary to, or involved an unreasonable

---

[6] Court of Appeal decision, Ex. F to Ct. Rec. 6 at p. 1; San Diego County Superior Court decision, Ex. E to Ct. Rec. 6 at p. 6; Tr. of BPH hearing, Ex. B to Ct. Rec. 6 at pp. 67-68.

**ORDER DENYING**
**§2254 PETITION -** 9

application of, clearly established U.S. Supreme Court precedent. It also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Petitioner's 28 U.S.C. §2254 petition (Ct. Rec. 1) is **DENIED**.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this order and forward a copy to the Petitioner and to counsel for the Respondent. Judgment shall be entered accordingly.

**DATED** this 12th day of March, 2009.

*s/Lonny R. Suko*

LONNY R. SUKO
United States District Judge

**ORDER DENYING
§2254 PETITION -** 10